# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SELMA DIVISION

| | |
|---|---|
| JERMAINE WOODARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| DRAX d/b/a ALABAMA PELLETS, LLC, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and 42 U.S.C. § 1981.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and § 1981, providing for injunctive and other relief against discrimination.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Marengo County located in this judicial district.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII.

## STATEMENT OF THE PARTIES

5. Plaintiff Jermaine Woodard (hereinafter referred to as "Plaintiff" or "Woodard") is an African-American male over the age of nineteen (19) years. He is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named defendant.

6. Defendant Drax d/b/a Alabama Pellets, LLC (hereinafter "Defendant" or "Drax") is an entity subject to suit under Title VII. At all times relevant herein, Defendant was Plaintiff's employer.

## STATEMENT OF THE FACTS

7. Plaintiff is an African-American man and held a similar supervisory position to Craig Plowman and they both reported to general manager Rick Zimmerman. (*See Plowman v. Drax*, Civil Action No.: 1:24-cv-00444-WS-MU). They were both terminated on the same day, and neither was given a reason for their termination. Prior to their terminations, both men observed Zimmerman's discriminatory treatment of African-American employees on a daily basis. Zimmerman requested both men to aid him in singling out African-American employees for harassment and extra scrutiny in the workplace. Both men refused to cooperate in the discrimination that Zimmerman requested.

8. Plaintiff began working at Drax in or near the year 2014.

9. For the first eight (8) years of his employment at Drax, Plaintiff experienced a productive and healthy work environment. However, that all changed when Rick Zimmerman ("Zimmerman") came on board as general manager (September, 2022).

10. Throughout his experience working under Zimmerman, Plaintiff always noticed that Zimmerman would treat him and other African-Americans less favorably than their white

counterparts. More specifically, Zimmerman would try to hire more white employees to replace African-American employees. Additionally, Zimmerman would scrutinize and micromanage African-American employees, including Plaintiff, and be very lenient towards white employees.

11.     Sadly, Zimmerman's disparate treatment did not stop there. Indeed, Zimmerman further targeted African-American employees by accusing Plaintiff of having an affair with another African-American woman (Debra Jones). Zimmerman did not treat any white employee in a similar fashion. Due to Zimmerman spreading that rumor, Plaintiff spoke with another supervisor named Craig Plowman ("Plowman") and explained that he felt Zimmerman was targeting African-American employees (such as himself and Ms. Jones) by making such a fabricated statement. As yet another example of disparate treatment, Zimmerman even sent a less qualified white employee to receive additional management training but denied Plaintiff that very same training. When he found this out, Plaintiff inquired as to why he was being denied that training and explained to Zimmerman that he felt this action would detrimentally affect his performance. However, Zimmerman ignored Plaintiff's complaint.

12.     Due to Zimmerman's rebuff, Plaintiff contacted Corey Williams ("Williams") the Vice President of Drax, on or around November 4, 2022, and complained that Zimmerman was treating white employees more favorably than African-American employees. However, Williams did not take any action. Instead, Plaintiff found that Zimmerman isolated him and excluded him from management meetings, which had not occurred prior to his complaints. Because this isolation and exclusion placed him at a further disadvantage, Plaintiff felt that he now had a target on his back due to engaging in protected activity.

13.     Sadly, Plaintiff's concern came to fruition when, shortly after his last complaint, Plaintiff was terminated without reason. Specifically, on or around November 28, 2022,

Zimmerman called Plaintiff into his office and informed him that this would be his last day at the plant and that he was being fired, effective immediately. Plaintiff voiced his opposition and even questioned if this had something to do with his complaints of disparate treatment. However, Zimmerman gave no response to Plaintiff. Much to Plaintiff's dismay, approximately three to four other African-American employees were fired that day as well. However, less qualified white employees were allowed to remain working.

14. Plaintiff's termination was pretext. The real reason was Plaintiff's race and his engaging in protected activity during his time employed at Drax.

## FIRST CAUSE OF ACTION
### Racial Discrimination
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

15. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-14 with the same force and effect as if fully set forth herein and further states as follows:

16. Plaintiff is an African-American male.

17. Plaintiff has been discriminated against and treated less favorably than similarly-situated white employees because of his race.

18. More specifically, Drax discriminated against Plaintiff and other African-Americans by subjecting them to intense scrutiny and micromanagement, while allowing white employees all the leniency they desired. Conversely, if an African-American employee, including Plaintiff, made a mistake, they would be subject to disciplinary, up to and including termination.

19. Sadly, Drax's disparate treatment did not stop there. Indeed, Zimmerman further targeted African-American employees by accusing Plaintiff of having an affair with another African-American woman (Debra Jones). Zimmerman did not treat any white employee in a similar fashion. Due to Zimmerman spreading that rumor, Plaintiff spoke with another supervisor

named Craig Plowman ("Plowman") and explained that he felt Zimmerman was targeting African-American employees (such as himself and Ms. Jones) by making such a fabricated statement. As yet another example of disparate treatment, Zimmerman even sent a less qualified white employee to receive additional management training but denied Plaintiff that very same training, placing Plaintiff at a disadvantage.

20. Although Plaintiff complained to management and Drax's vice president about the disparate treatment, nothing was ever done to remediate the situation.

21. Moreover, Plaintiff and several other African-American employees were terminated from the company, despite having done nothing wrong, while their white counterparts were allowed to keep their jobs and continue working.

22. The acts discussed throughout this Complaint affected the terms, conditions and/or privileges of Plaintiff's employment.

23. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

24. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SECOND CAUSE OF ACTION**
**Retaliation Based on Race**
**under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981**

25. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-14 with the same force and effect as if fully set forth herein and further states as follows:

26. Plaintiff experienced and witnessed race discrimination shortly after Zimmerman took over as general manager in or near September, 2022.

27. On multiple occasions, Plaintiff complained about this discriminatory treatment to Zimmerman, other management, and Drax's vice president, thereby engaging in protected activity. However, nothing was ever done to remediate the issues Plaintiff complained about. To the contrary, Plaintiff was retaliated against in the form of being isolated and excluded from management meetings, and ultimately terminated.

28. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

29. As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant is violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended," 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*Nicki Lawsen*

Sidney Jackson
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

8